**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TAGT, L.P. | § | CASE NO. 06-32356-H1-11 |
| | § | (CHAPTER 11) |
| Debtor | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| YORKSHIRE, L.L.C. | § | CASE NO. 06-32595-H1-1 |
| | § | (CHAPTER 11) |
| Debtor | § | |
| | § | |

**MOTION FOR SANCTIONS FOR BAD FAITH FILING**
**AND PROSECUTION OF CHAPTER 11 CASES**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST  FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE,THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE.  OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THE COURT HAS SCHEDULED A HEARING ON THIS MOTION TO BE HELD ON <u>SEPTEMBER 28, 2006, AT 1:30 P.M.</u> IN COURTROOM 404, FOURTH FLOOR, UNITED STATES COURTHOUSE, 515 RUSK, HOUSTON, TEXAS.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Terry Luedtke and George Luedtke (collectively, the "Movants"), parties in interest herein, and for their Motion for Sanctions for Bad Faith Filing and Prosecution of Chapter 11 Case would respectfully show the Court as follows:

<u>Jurisdiction</u>

1.     This Court has jurisdiction over this matter pursuant to the provisions of 28 US.C. §§ 1334, 105 and 1927.  Pursuant to the provisions of 28 U.S.C. §157(b)(2)(A), this matter is a core matter in which this Court may enter a final order.

<u>Introduction</u>

2.     This Motion arises from the bad faith filing and prosecution of this Chapter 11 case.  The Movants are mindful of the fact that it is their burden to prove – by clear and convincing evidence – that the parties against whom sanctions are being sought have engaged in bad faith conduct with respect to these cases.  *Crowe v. Smith*, 261 F.3d 558 (5th Cir. 2001). The facts to be presented, in the view of the Movants, satisfy this burden of proof.

3.     The parties against whom sanctions are sought are:

   a.   Tracy Knight ("Knight") - the (now-former) manager and president of Yorkshire, LLC ("Yorkshire"), the general partner of the Debtor;

   b.   John Leonard ("Leonard") – original attorney for the Debtor at time of filing and subsequently the attorney for Knight in this case;

   c.   Russell, Leonard, Key and Key, PLLC (the "Russell Firm") – Leonard's law firm; and

   d.   Ronald Yandell ("Yandell") – successor attorney for the Debtor through the date of dismissal of the case.

4.      The Movants are individuals who are limited partners in the Debtor and members of Yorkshire.  Terry Luedtke is a resident of Brenham, Washington County, Texas.  George Luedtke resides in Crowley, Tarrant County, Texas.

5.      TAGT, LP ("TAGT"), one of the Debtors, is a holding company for certain real estate, located in Harris County, Texas, at which the business operations of related non-debtor entities are conducted.  It does not have any other business activity.

6.      Yorkshire, LLC ("Yorkshire"), the other Debtor, is the general partner of TAGT.

7.      These chapter 11 cases were filed in the United States Bankruptcy Court for the Northern District of Texas in Wichita Falls on March 3, 2006.  The chapter 11 petitions, filed by Leonard, each reflected that the Debtor "has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately filing the date of this petition . . . "  Knight signed the chapter 11 petitions for the Debtors as "President, Manager." [1]

8.      At the time the petitions were filed, Knight was the plaintiff in litigation filed in the state district court in Wichita Falls against TAGT, Yorkshire, Harris CF, d/b/a Harris County Farms, LP ("HCF") and its general partner, L.T.K. Management, LLC ("LTK"), affiliates of the Debtor and Yorkshire, the Movants and Allan Luedtke.  The litigation sought damages and the liquidation of the Debtors and their affiliated entities.

<u>Pre-Petition Factual Background</u>

9.      The Movants have, for their entire careers, been engaged in the purchase and sale of livestock and the operation of slaughterhouse operations related to those activities.

10.     During the period 2001-2003, preliminary discussions occurred among the Movants about opening a custom slaughterhouse operation in Harris County, at which facility

---

[1]      The Petition in the TAGT case further provided that there were no pending cases filed by an affiliate of the Debtor, when a case was in fact had been filed for Yorkshire contemporaneously with, but prior to, the filing of the TAGT Petition.

members of the public could either bring their livestock for processing or could purchase livestock from the slaughterhouse (which would maintain a quantity of animals for that purpose) to be processed to order.

11.     In the fall of 2003, it was agreed that the operation would proceed.  It was decided that Allan Luedtke, brother of the Movants, would be brought into the business to manage its day-to-day operations, and that Knight, a family friend, would be invited to participate as an investor and to assist in day-to-day management support.

12.     Pursuant to the business plan, two limited partnerships were formed.  One limited partnership is HCF, which is a Texas limited partnership.  Its general partner is LTK, a Texas limited liability company.  The other limited partnership is TAGT, which is also a Texas limited partnership.  TAGT's general partner is Yorkshire, which is a Texas limited liability company.

13.     Under the business plan, HCF was formed for the purpose of operating the custom slaughterhouse business.  The facilities for the operation of the slaughterhouse (the "Facilities") were to be built and owned by TAGT, which, under the plan, would lease the Facilities to HCF.  The initial plan was that Terry Luedtke, Allan Luedtke, and Knight would each contribute capital and, after the capital contributions were completed, Terry Luedtke, George Luedtke, and Knight would each own a 33% limited partnership interest in TAGT and in HCF. Further, the plan was that Yorkshire would own a 1% general partnership interest in TAGT and LTK would own a 1% general partnership interest in HCF.  Finally, the plan was that, after all contributions were made, Terry Luedtke, George Luedtke, and Knight would each own one-third (1/3) of Yorkshire and one-third (1/3) of LTK.

14.     The partnerships and limited liability companies which were created as the entities through which the business would be operated were formed in December 2003 by David Knight, who is an attorney in Wichita Falls and the brother of Knight.  David Knight was designated as registered agent for service with the Secretary of State of the State of Texas, and

his office was designated as the address for service of process on the entities.  The initial managers of Yorkshire and LTK were Allan Luedtke and Knight.

15.     To assist in acquiring the necessary funds to complete construction of the Facilities, HCF and the Debtor negotiated loans.  Though the loans were guaranteed by the Movants and Knight, the loans were actually made by the Bank in reliance on Terry Luedtke's credit.  One loan was made to HCF in the amount of $668,000.00.  The proceeds of this loan were used to purchase equipment to be placed in the Facilities.  The other loan was made to the Debtor.  The proceeds from this loan were used in construction of the Facilities.

16.     The Debtor purchased land in Harris County, Texas for location of the Facilities. Construction of the Facilities and purchase of equipment was completed in November 2004.

17.     The day-to-day operation of the business began in November 2004.  The business has been operating continuously since that time.  By November 2004, the expanding financial needs of the business resulted in a call for increased contributions from the owners. The contributions made by the owners were unequal.  Eventually, Terry Luedtke funded the operation of the business in the amount of approximately $400,000.00.  Knight paid into the business approximately $55,000.00 in cash and contributed labor valued at approximately $65,000.00.  As a result of disproportionate contributions, the plan for percentage of ownership in the business changed.

18.     Allan Luedtke, a brother of the Movants but who owns no interest in any of the entities, has been the manager of the businesses since operations commenced in November 2004.  By November 2004, the relationship between Knight and Allan Luedtke, Terry Luedtke, and George Luedtke had become strained.  In December 2004, Knight, by his own choice, ceased to be active in the day-to-day operation of the businesses.

19.     In the spring of 2005 at a properly called meeting of LTK, Knight was removed from his position as manager and president of LTK.  However, Knight remained as one of two managers (together with Allan Luedtke) and as president of Yorkshire.

20.     In May 2005, Knight appeared at the Facilities with his counsel.  Terry Luedtke and Allan Luedtke were present at that time.  Knight told them that he had filed suit (the "State Court Suit") in Wichita County, Texas against Terry Luedtke, Allan Luedtke, George Luedtke, and each of the four business entities, in which he had requested immediate injunctive relief and/or the appointment of a receiver for the businesses.  The State Court Suit also requested the dissolution of the business on final trial.  Knight announced that he was demanding $2.5 million for his interest in the business if the Movants wanted to settle the State Court Suit.  The only plaintiff in the State Court Suit is Knight.

21.     Service of process on the defendants in the State Court Suit was completed in early September 2005.  The hearing for immediate injunctive relief and appointment of a receiver was passed.  Agreements were made regarding discovery and providing documents to Knight and information concerning the operation of the business on a regular basis.  After being served with citation, each of the defendants in the State Court Suit filed a motion to transfer venue.  Each defendant which was an entity asked that the State Court Suit be transferred to Harris County, Texas, and each defendant who was an individual asked that the case be transferred to his county of residence.

22.     In the fall of 2005, settlement discussions through letters and by telephone began.  Terry Luedtke and George Luedtke obtained an appraisal of the assets of the business.  Knight indicated he was obtaining a business appraisal.  Knight requested that the parties in the State Court Suit submit to the case to mediation.  The defendants in the State Court Suit agreed and mediation took place on December 30, 2005, even though Knight did not obtain the business appraisal.  The mediation was unsuccessful.

23.     At the end of October 2005, the bank required new loan guaranties to be signed by Terry Luedtke, George Luedtke, and Knight.  Knight refused to sign the loan guaranties and provide personal financial information required by the Bank.  As a result, the loan was in default. Following the failure of the mediation, in January 2006 the Bank made demand for payment of

the delinquent amount (less than $6,000.00) on the loan that was in default, plus $750.00 in attorneys' fees.  In response to the demand, Knight signed the guaranty, the delinquent installment (funded by Terry Luedtke) was paid, and the Bank's demand was withdrawn.

24.     In January 2006, following the unsuccessful mediation, each of the four entities and Terry Luedtke, George Luedtke and Allan Luedtke requested a hearing by the District Court of Wichita County on their pending motions to transfer venue.  The Court Coordinator of the District Court of Wichita County set the hearing on each of the motions to transfer venue for March 10, 2006.  Notice of the hearing on the motions to transfer venue was provided to all of the parties, including Knight.

25.     On February 20, 2006, notice was given to the partners and members of Yorkshire and TAGT of a special meeting to be held on March 3, 2006 for the noticed purposes of (i) removing the current managers of Yorkshire and appointing new managers and (ii) changing the registered agent and address for service of the entities.

26.     Pursuant to Knight's attorney's request, citing Knight's being in "South Texas" on the scheduled day of the special meeting, the Movants agreed to postpone the meeting to March 8, 2006.

<u>The Filing and Post-Petition Activities</u>

27.     On March 3, 2006, the date originally set for the special meeting, Knight filed the petitions (collectively, the "Petitions") in the TAGT and Yorkshire cases.  The filing of the petition in the TAGT case, (the "TAGT Petition")  was preceded by the filing of a chapter 11 petition for Yorkshire (the "Yorkshire Petition").

28.     The Petitions were executed by Knight in his capacity as "President, Manager" of Yorkshire (TAGT Docket No. 1; Yorkshire Docket No. 1).  Leonard signed both Petitions as attorney for the Debtors.

29.     On March 9, 2006, Yandell moved to be substituted as attorney for the Debtors in place of Leonard (TAGT Docket No. 3; Yorkshire Docket No. 3).  On March 30, 2006, Leonard

entered appearances in the bankruptcy cases as attorney for Knight (Docket No. 18; Yorkshire Docket No. 18).

30.     On March 9, docketed on March 14, 2006, Yorkshire, acting through Yandell, removed the pending State Court Suit, in which it was a named defendant, to the bankruptcy court (Yorkshire Docket No. 12).  The action (the "Adversary Proceeding") was docketed as Adversary No. 06-07001.

31.     On March 31, 2006 a motion was filed to substitute Leonard as attorney for Knight as plaintiff in the Adversary Proceeding.  (Adversary Docket No. 4).

32.     On March 22, 2006, the Debtors filed their schedules of assets and liabilities in their respective cases (TAGT Docket No. 11; Yorkshire Docket No. 14).

33.     TAGT's schedules reflect the ownership of the Harris County property, cash in the Bank, a claim for rent from HCF, and claims against the Movants, HCF, and LTK for "Breach of Agreement and Accounting and Dissolution" in an "Unknown" amount as its assets.  Its scheduled liabilities were secured claims of the Bank, "shareholder" claims of the Movants and of Knight (in an unknown amount), and a claim of Knight for the $5,000 advance of attorney's fees, apparently the retainer payment made to Yandell.

34.     Yorkshire's schedules reflect a 1% ownership interest in the Harris County property, cash in the Bank, a 1% ownership interest in TAGT, and claims against the Movants, HCF, and LTK for "Breach of Agreement and Accounting and Dissolution" in an "Unknown" amount as its assets.  Its scheduled liabilities were secured claims of the Bank, "shareholder" claims of the Movants and of Knight (in an unknown amount), and a claim of Knight for the $5,000 advance of attorney's fees, also apparently for a retainer payment made to Yandell.

35.     On April 6, 2006, the Movants filed motions to dismiss the chapter 11 cases and, alternatively, to transfer the cases to the Southern District of Texas (TAGT Docket Nos. 20 and 21; Yorkshire Docket Nos. 20 and 21).  The motions to dismiss were subsequently amended (TAGT Docket No. 29; Yorkshire Docket No. 28).

36.     On April 21, 2006, the Debtor and Yorkshire, acting through Yandell, filed a joint response (the "Response") to the amended motion to dismiss (TAGT Docket No. 32; Yorkshire Docket No. 31).  The Response asserted the following positions;

    a.  in response to the Movants' claim that the filing of the cases was unauthorized, that "the bankruptcy filing was authorized by one of the Debtors [sic] two managers on the filing date."[2]  (Response, at ¶ 4);

    b.  the Debtors face severe financial issues (Response, ¶5);  [However, in support of this position, attached  to the response was a letter from the Bank, confirming that, as of the Petition Date, the loan payments to the Bank were current, and the loan was not in default (Response, Exhibit "C")];

    c.  following a series of allegations claiming irregularities in the handling of the construction of the Debtor's facility and in the operations of the custom slaughtering business (in which neither of the Debtors was involved), the response suggested the necessity for the appointment of a trustee, *although no pleadings seeking such an appointment was on file* (Response, ¶ 5).

37.     Also on April 21, 2006, Yandell, on behalf of the Debtor filed a response to the motion to transfer venue, wherein the Debtor "consented" to the transfer of venue, but only to the Dallas Division of the Northern District of Texas, stating as grounds therefor the proposition that "[t]wo of the three members of the Debtor reside either in or near the Dallas Division *or consent to venue there.*  (TAGT Docket No. 33; Yorkshire Docket No. 33, emphasis added).  As one of the two "local" members of the Debtor, George Luedtke, who resides in rural Tarrant County, was a movant seeking the transfer to the Southern District of Texas, the "consenting" member is assumedly Knight.

---

[2]     Knight had been removed as a manager of Yorkshire at the special meeting of Yorkshire, which had been rescheduled at Knight's request, on March 8th.

38.     At the hearing on the motions to dismiss and transfer venue, Judge Hale elected the option of transferring the cases, as well as the Adversary Proceeding, to the Southern District of Texas, and subsequently signed an order finding that:

   a.  venue is not proper in the Northern District of Texas pursuant to 28 U.S.C. § 1408;

   b.  venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1408 because the principal place of business and the principal assets of the Debtor are and have been located in the Southern District of Texas for more than 180 days immediately proceeding [sic] the commencement of this bankruptcy case; and

   c.  in the alternative, in the interest of justice and for the convenience of the parties, this bankruptcy case should be transferred to the Southern District of Texas.

(TAGT Docket No. 39; Yorkshire Docket No. 40).

39.     During the period between the venue/dismissal hearing and the signing of the order transferring venue, Knight filed a Motion for the Appointment of a Trustee (TAGT Docket No. 37; Yorkshire Docket No. 38).  The trustee motion relies essentially on the arguments raised by Yandell in his earlier response to the motion to dismiss (see ¶ 35(c) above).

40.     Following the transfer of venue of the cases, this Court set the pending motions to dismiss and to appoint a trustee for hearing.  At the hearing, the Movants, the Debtors and Knight stipulated, *at the request of Knight*, that as of the Petition Date and at all times through the date of the hearing:

   a.  The Debtors are solvent entities.

   b.  The Debtors are paying the Bank on the debts of the Debtors.

   c.  The debts of the Debtors to the Bank are current and not in default.

   d.  The debts of the Debtors to vendors, trade creditors and other creditors are current and not in default.

e.   There are no notices of default, foreclosure actions or repossession action for any liens, security interests or encumbrances of the Debtors.

f.   There are no outstanding notices of default or acceleration of any debts of the Debtors that have not been cured.

41.   Upon the parties stipulation, the Court entered agreed Orders dismissing the bankruptcy cases, reserving jurisdiction to consider any request for sanctions for bad faith filing of the Debtors' bankruptcy cases (TAGT Docket No. 53; Yorkshire Docket No. 47).

<u>Request for Imposition of Sanctions</u>

42.   The Movants seek the imposition of sanctions for the actions of Knight, Leonard and Yandell in the filing and prosecution of the Chapter 11 cases of TAGT and Yorkshire.  More specifically, the proceedings were filed in bad faith and without proper authority, for entities which had no business being in a bankruptcy court.  Further, with respect to the attorneys, the activities in both the filing of the cases and the subsequent prosecution clearly demonstrate a conflict of interest with their nominal clients, i.e., TAGT and Yorkshire, when their efforts were undertaken solely for the benefit of Knight.  Yandell's appearance on behalf of the Debtors may have the effect of insulating him from potential sanction for the filing of the cases, but not for his efforts undertaken in effect representing Knight's cause in the cases.

43.   There was no perceivable "bankruptcy purpose" for the filing.  While bankruptcy cases are legitimately filed for the purpose of facilitating a sale of a company, the recapitalization of a struggling enterprise, to maximize the values to be realized by creditors in a liquidation, or to invoke – in good faith – the shelter of the automatic stay to facilitate one of such purposes, no such grounds existed in this case.  As Knight and Leonard knew on the filing date, and as should have been obvious to Yandell with the least bit of factual inquiry at the time of his engagement, *and as the parties stipulated at the hearing on dismissal*, the debtors were at all times solvent, were not in default on any of their debts, and had no creditors, other than the Bank.

44.     The only purpose served was (i) to effect the delay in the removal of Knight from his role as one of the managers of Yorkshire, the general partner of TAGT, and (ii) to provide the ability to remove the State Court Suit to a new forum where it was apparently hoped that Knight could regain control of the litigation.

<u>The Parties and Their Conduct</u>

<u>Tracy Knight</u>

   <u>Authority to File</u>

45.     The petitions filed to initiate the Yorkshire and TAGT cases were signed by Knight in his capacity as "President, Manager."  Knight did have those titles as of the Petition Date due to the postponement – at his request - of the corporate meeting scheduled to effect his removal from those positions.  However, his incumbency as a manager and designation as President of Yorkshire did not provide the authority for the execution and filing of the Yorkshire and TAGT petitions.

46.     In the Response (filed to the motions to dismiss the cases), Knight based his claim of authority on the flawed arguments that:

   a. As the filing of bankruptcy is a "fundamental business transaction," it required "the affirmative vote of a majority of the companies [sic] members *entitled to vote on the subject*."  (TAGT Docket No. 32; Yorkshire Docket No. 31, emphasis as in original);

   b. Article IX, paragraph 9.01 of the articles of organization of Yorkshire disavowed the effect of the Texas Limited Liability Company Act requiring more than a majority vote by its members on "some matters."(*Id.*);

   c. Article X, Paragraph 10.01 of the articles of organization of Yorkshire provides that only the Managers may dispose of property of the Debtor. (*Id.*);

   d. The bankruptcy filing was accordingly authorized by one of the Debtors [sic] two managers on the filing date; and

e. It is the two managers, not members, who are the "governing authority" under the Code and members "entitled to vote on that matter (*disposal or bankruptcy*)" under paragraph 9.01 of the articles." (*Id.*, emphasis added).

47. The foregoing argument ignores the effect of several provisions of the Regulations of Yorkshire (the "Regulations"), those being:

a. Article 7.06 of the Regulations provides that "Consent of a majority of Members is required, in accordance with Article 2.23(d) of the [Texas Limited Liability Company] Act, to . . . (b) voluntarily cause the dissolution of the Company; or (c) authorize any act that would make it impossible to carry on the ordinary business of the Company."

b. More importantly, Article 6.02 of the Regulations provides that "In managing the business and affairs of the company and exercising its powers, the Managers *shall act collectively through meetings and written consents . . . .*" (emphasis added). Allan Luedtke, the other manager of Yorkshire, will testify at the hearing that he was never consulted by Knight at any time prior to the Petition Date regarding any bankruptcy filing by either Yorkshire or TAGT.

48. With respect to the authority of the general partner provided in the Agreement of Limited Partnership of TAGT, Article 7.5 of the agreement specifically prohibits the general partner from doing "any act that would make it impossible to carry on the purposes of the Partnership and business of the Partnership" without the *unanimous consent* of all Partners of TAGT. (Although this provision does provide that the disposition of any or all of the Partnership Property would not be deemed such an act, the attempted equation by Knight of such disposition authority as permission to proceed with a bankruptcy filing is disingenuous.)

49. Although Knight may attempt to assert that the authority was among the powers delegated to him by designating him as "President" of Yorkshire, the title affords him no greater

power than that given to the president of a Texas corporation to proceed with a bankruptcy filing absent approval of the board of directors.

50.     A further flaw in the assertion that the bankruptcy filings were properly authorized arises from the fact that the Yorkshire case was filed prior to the filing by TAGT.  Under applicable Fifth Circuit authority, the filing of bankruptcy by the general partner of a limited partnership deprives the general partner of any management authority, which would include the authority to proceed with a bankruptcy filing for the limited partnership.  *In re Phillips*, 966 F.2d 926 (5th Cir. 1992).

Bad Faith Filing

51.     The filing of the case was clearly done for the grossly improper purposes of shifting the forum of  a two-party dispute to what was hoped would be a more friendly forum than that in which Knight found himself, as well as to attempt to delay his removal from all management authority in the debtors.

52.     As of the Petition Date, Knight was facing (i) the convening of a meeting – postponed at his request from March 3 (the Petition Date) to March 8 - of the members of Yorkshire for the stated purpose of removing him as a manager and (ii) the hearing on March 10 on the motion to transfer venue of the State Court Suit from Wichita County, where no valid basis for venue existed, to Harris County.

53.     The filing of the bankruptcy cases had the effect of allowing Knight to exercise his "authority" to proceed with the filing prior to his removal as a manager on March 8 and temporarily delaying, through the removal of the State Court Suit to this Court, the transfer of venue of the pending litigation.

John Leonard and the Russell Firm

54.     Leonard's role in this case, in the view of the Movants, provides the basis for imposition of sanctions against him and the Russell Firm[3] pursuant to the inherent authority of this Court as well as for violation of Rule 9011(b) of the Rules of Bankruptcy Procedure.

55.     A reasonable inquiry into the circumstances surrounding Knight's intent to move the litigation into the bankruptcy court where no basis for seeking relief in that forum existed, other than the improper purpose of imposing delay in the ongoing effort to move the State Court Suit to a proper venue, constitutes a violation of Rule 9011(b).[4]  This is amply demonstrated by the fact that filing of the case was clearly timed to preserve Knight's supposed "authority" to proceed with the filing and to avert the impending venue change to Harris County.

56.     No other pleadings were filed by Leonard in the case during his brief tenure as bankruptcy counsel for TAGT and Yorkshire.  However, his subsequent appearance in the case as counsel for Knight individually, which was made less than three weeks following the substitution of Yandell as debtor's counsel, points out the conflict of interest that permeated Leonard's role as debtor's counsel in the case.

57.     Following his appearance as counsel for Knight in the main case, he was substituted as counsel for Knight, as plaintiff, in the Adversary Proceeding, in which case two of the named defendants were TAGT and Yorkshire, Leonard's now-former clients.  Leonard subsequently filed a Second Amended Petition in the Adversary Proceeding on April 25, 2006 (the day before the hearing on venue transfer in the bankruptcy court), which pleading differed from the First Amended Petition filed in the state court only in that it broke out and renumbered

---

[3]       Sanctions are appropriate against the Russell Firm pursuant to Fed R. Bankr. P. 9011(c)(1)(A), which provides that, "Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates and employees."

[4]       As this Court has previously observed, "[W]hen Rule 9011 of the Federal Rules of Bankruptcy Procedure was amended in 1997 to provide a 'safe harbor' comparable to the safe harbor under Rule 11 of the Federal Rules of Civil Procedures, no safe harbor was granted for the filing of a bankruptcy petition in violation of the rules.  Fed.R.Bankr.P.9011(c)(1)(A)."  *In re TBYRD Enterprises, L.L.C.*, Case No. 06-30078-H1-11, Mem. Op. at 2, (Bankr. SDTX, Mar. 16, 2006).

its paragraphs and deleted a reference in the First Amended Petition to the removal of Knight as manager of Yorkshire.

58.     Leonard, following his appearances as Knight's attorney, proceeded with filing of responses to the motions to dismiss and to transfer venue and, ten days after the announcement of the Court's ruling transferring venue of the bankruptcy cases and the Adversary Proceeding to the Southern District, but before the entry of the orders implementing those rulings, filed a motion for the appointment of a Trustee (the "Trustee Motion ") against his former clients in the TAGT and Yorkshire cases.  (TAGT Docket No. 37; Yorkshire Docket No. 38)

59.     It is the belief of the Movants that any reasonable inquiry into the basis for Knight's intent in pursuing bankruptcy relief would have led any reasonable bankruptcy practitioner to decline to undertake the filings made by Leonard in this case.  His actions (and by operation of the rule, the actions of the Russell Firm) are sanctionable.

Ron Yandell

60.     Yandell has attempted to avoid being drawn into this motion by asserting that he was not on the scene at the filing of the case.  The docket reflects that he made his appearance on March 9, six days after the petitions were filed.  However, both his action in undertaking the representation and his prosecution of the "cause" being pursued by Knight, at a time when a reasonable inquiry would have amply demonstrated the bad faith underlying the cases, renders his actions sanctionable.

61.     Although Yandell arrived in the case "late," he was hardly a newcomer to the representation, as he undertook a removal of the State Court Suit on the same day he first appeared in the case.  (The pending motion to transfer venue as to the remaining defendants remained on the docket for consideration in the state court on the previously-noticed motion on March 10th. The removal averted the hearing on the venue transfer.)

62.     Following his appearance in the cases, Yandell the prepared (or assisted in the preparation of) the debtors' schedules and statement of affairs for the cases.  Those filings clearly reflect that there was no basis for pursuing any bankruptcy relief.  The only secured debt was the current obligations to the Bank, and the only unsecured debt were the "unknown" amounts "owed" to the shareholders and members and the claim for reimbursement to Knight for the funds advanced to Yandell as his retainer in the cases.

63.     In addition to these filings, Yandell filed a joint response to the motions to dismiss the cases (TAGT Docket No. 32; Yorkshire Docket No. 31), which principally relied on arguments that the appointment of a trustee was clearly called for and justified the continued prosecution of the cases.  This is mystifying, as no motion for the appointment of a trustee was then on file in either case.  Doubly mystifying is the fact that the matters asserted by Yandell as the grounds for that relief are those of the operating entities at the premises owned by the Debtors, which operating entities were not in bankruptcy.

64.     Yandell also filed a response to the venue motions in the bankruptcy cases (TAGT Docket No. 33; Yorkshire Docket No. 33), "consenting" on behalf of the Debtors to the transfer of venue, not to the Southern District, but to the *Dallas Division* of the Northern District of Texas, where "[t]wo of the three members of the Debtor either reside in or near the Dallas division or consent to venue there."  As TAGT has limited and general partners, and no members, that allegation seems inapposite.  As to Yorkshire, one of the members, George Luedtke, is a resident of the Fort Worth division of the Northern District.  It is assumed that the "consenting" member is Knight – who resides in Houston.

65.     While Yandell may be protected from the imposition of Rule 9011 sanctions by the prior cure notice provisions of the rule, the overall conduct in prosecuting these bankruptcy cases for the clear benefit of Knight, to the detriment of his Debtor clients, is within the Court's inherent power to "police" the jurisdiction of the Court, and to deter others from the groundless

pursuit of relief where none is available, thus imposing needless expense on the parties and depriving both the parties and this Court of valuable time.

Appropriate Sanctions

66.    "Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution and confirmation of bankruptcy proceedings."  *In re Little Creek Development Company*, 779 F.2d 1068, 1071 (5th Cir. 1986) (herein cited *Little Creek*").  The "[r]equirement of good faint prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes  Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those and creditors with 'clean hands." *Id.* At 1072.

67.    In *Little Creek*, the Court further observed, "Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives and local financial realities." *Id.*

68.    It is the Movants' belief that the foregoing recitation of facts, which will be proved at the hearing on this motion, clearly supports the necessity of the imposition of sanctions.  "In determining appropriate sanctions, the Court should limit the sanction to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *In re TBYRD Enterprises, L.L.C.*, Case No. 06-30078-H1-11, Mem. Op. at 16, (Bankr. S.D.Tex., Mar. 16, 2006).

69.    One element of an appropriate sanction is the shifting of fees and expenses incurred by the harmed parties in responding to the proceedings initiated and pursued by Messrs. Knight, Leonard and Yandell.  The first element of those expenses are the professional fees incurred – and paid – by the Movants, including:

<u>Terry Luedtke</u>

| | | |
|---|---|---:|
| a. | Legal Fees – Law Offices of Sidney Levine (Sealy, TX) | $4,000.00 |
| b. | Legal Fees – Davison, Rugely & Spurgers, LLP (Wichita Falls) | 6,187.03 |
| c. | Legal Fees – Thomas S. Henderson (Houston) (to 7/31/06) | 11,928.48 |
| d. | Legal Fees – Thomas S. Henderson (Houston) (est. to hearing) | 20,000.00 |
| e. | Travel Expenses – Airfare | 2,005.80 |
| f. | Travel Expenses – Hotel | 236.61 |
| g. | Travel Expenses – Car Rental | 97.93 |
| h. | Travel Expenses – Meals | 83.97 |
| i. | Travel Expenses – Gasoline | 200.00 |
| j. | Research Fees – Brenham National Bank | 106.50 |
| k. | Office Expense – Secretarial Overtime, Supplies | 600.00 |
| | Total | $45,446.32 |

<u>George Luedtke</u>

| | | |
|---|---|---:|
| a. | Legal Fees – Michael McLarty, P.C. | $ 2,538.26 |
| b. | Telephone Expense | 200.00 |
| c. | Travel Expenses | 330.50 |
| d. | Bank Fees (Research, reproduction) | 63.00 |
| e. | Office Expense – Secretarial Overtime | 625.00 |
| | Total | $ 3,753.76 |

70.     A second element of sanctions would be that amount which compensates the wronged parties for damages incurred as a consequence of the bad faith activities of the actors. In this case, apart from the fees and expenses incurred by the Movants, the truly wronged parties are the Debtors. The damages to the Debtors occasioned by the actions of Knight, Leonard and Yandell are admittedly unquantifiable at this time. However, as the goal of the Debtors, as it is for any new business, is that of operating financially independent of its owners,

i.e., being able to obtain their own credit independent, as in the present case, of the credit worthiness of the Movants.  The actions of Knight, Leonard and Yandell in these cases has placed the Debtors of having to attempt to explain away the affirmative response to "Have you ever declared bankruptcy?" on a credit application or the adverse notation on their respective credit/D&B reports.  For this reason, it is appropriate that, in the event the Court deems it appropriate that further monetary sanctions be imposed to achieve the deterrent element suggested by the rules and cases, that the amount of such sanctions be made to the Debtors.

WHEREFORE, PREMISES CONSIDERED, Terry Luedtke and George Luedtke, the Movants, respectfully pray the Court, upon hearing the matters set forth above, enter its Order imposing sanctions as prayed for above for bad faith filing and prosecution of these Chapter 11 cases against Tracy Knight, John Leonard, Russell, Leonard, Key & Key, PLLC and Ronald Yandell, and that they such other and further relief to which they may be entitled.

Dated:  August 15, 2006

THOMAS S. HENDERSON, Attorney At Law

By: _____
    Thomas S. Henderson (TBA No. 09432300)

South Tower, Pennzoil Place
711 Louisiana, Suite 3100
Houston, Texas 77002-2716
Telephone: (713) 227-9500
Facsimile:   (713) 620-3023

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been served on the following parties by certified mail, return receipt requested, on the 15th day of August, 2006.

_____
Thomas S. Henderson

Tracy Knight
12810 Hazelway Lane
Cypress, Texas 77429

John Leonard, Esq.
Russell, Leonard, Key & Key, PLLC
P.O. Box 8385
Wichita Falls, Texas 76307-8385

Managing Member
Russell, Leonard, Key & Key, PLLC
P.O. Box 8385
Wichita Falls, Texas 76307-8385

Ron L. Yandell, Esq.
Law Offices of Ron L. Yandell
705 Eighth Street, Suite 720
Wichita Falls, Texas 76301