Filed by:
John A. Leonard, Esquire
**Leonard Key & Key, PLLC**
900 8th Street, Suite 320
P.O. Box 8385
Wichita Falls, Texas 76307-8385
Telephone:  940/322-5217
Facsimile:  940/322-3381
Email: lenbiz@rlklaw.net
Respondents

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 06-32356 –H1-11** |
| | § | |
| **TAGT, L.P.** | § | |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |
| | § | |
| | § | |
| **IN RE:** | § | **CASE NO. 06-32595-H1-11** |
| | § | |
| **YORKSHIRE, LLC** | § | |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |

## RESPONDENTS', JOHN A. LEONARD AND LEONARD, KEY & KEY PLLC, BRIEF

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

Respondents, John A. Leonard and Leonard, Key & Key PLLC, respectfully file their brief in support of their Response to the Motion for Sanctions.

## I.

## SANCTIONS UNDER RULE 9011

## A.

## RULE

Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers

(b) Representations to the court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -- [FN1]

**(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

**(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

**(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How initiated

(A) By motion

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  It shall be served as provided in Rule 7004.  The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).  If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(2) Nature of sanction; limitations

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.  Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

**(A)** Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

**(B)** Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

## B.

## PURPOSE

The Supreme Court has stated that Rule 11's central purpose is to deter baseless filings and streamline the administration and procedure of the federal courts. Cooter & Gell v. Hartmarx Corp, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).

The central goal of Rule 11 sanctions is deterrence of baseless filings and curbing of abuses, and district court should not impose sanctions so as to chill creativity or stifle enthusiasm or advocacy, and thus sanctions should not be more severe than reasonably necessary to deter repetition of conduct by offending person or comparable conduct by similarly situated persons. Photocircuits Corp. v. Marathon Agents, Inc., E.D.N.Y.1995, 162 F.R.D. 449.

The purpose of Rule 11 is to deter frivolous lawsuits, and not to deter novel legal arguments or cases of first impression. Footman v. Cheung, M.D.Fla.2004, 341 F.Supp.2d 1218, affirmed in part, appeal dismissed in part 139 Fed.Appx. 144, 2005 WL 1253884

Sheets v. Yamaha Motors Corp., U.S.A., 891 F.2d 533, (5th Cir. 1990)

Although the filing of a paper for an improper purpose is not immunized from rule 11 sanctions simply because it is well grounded in fact and law, only under unusual circumstances-such as the filing of excessive motions-should the filing of such a motion constitute sanctionable conduct.

# C.

## REQUIREMENTS FOR IMPOSING SANCTIONS

Prior to filing these cases a reasonable inquiry was made. As shown by the records Mr. Leonard spent 12.9 hours on research and additional time on investigation. Mr. Leonard never has had a motion for sanctions filed against him. He has practiced bankruptcy since 1980. He is board certified by the American Board of Certification in business bankruptcy law and by the State Bar of Texas Board of Legal Specialization in consumer and business bankruptcy. He has an AV rating in Martindale-Hubbell. In re First City Bancorporation of Texas Inc., 282 F.3d 864 (5th Cir. (Tex.) 2002) A court, however, should exercise restraint when considering using its inherent power to impose sanctions. Id. Sanctions must be chosen to employ "the least possible power to the end proposed." Spallone v. United States, 493 U.S. 265, 280, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990)(quoting Anderson v. Dunn, 6 Wheat. 204, 231, 5 L.Ed. 242 (1821)). In other words, the sanctioning court must use the least restrictive sanction necessary to deter the inappropriate behavior.

Touchstone for Rule 11 sanctions is counsel's failure to make reasonable inquiry into facts being represented. In re Antell, Bkrtcy.E.D.Pa.1992, 155 B.R. 921 Investigation required under bankruptcy rule governing sanctions need not be to the point of certainty to be reasonable; however, the signer of pleadings must explore readily available avenues of factual inquiry. In re KTMA Acquisition Corp., Bkrtcy.D.Minn.1993, 153 B.R. 238.

Factors which bankruptcy court may consider in deciding whether attorney has made "reasonable inquiry" into facts, for purposes of avoiding liability for Rule 9011 sanctions, include time available to attorney for investigation, attorney's reliance on client for factual support for document, complexity of factual and legal issues, and whether attorney who signed

document accepted case from another member of bar or forwarding attorney. In re Carruth, W.D.La.1993, 161 B.R. 170.

In context of bad-faith filing of bankruptcy petition, imposition of sanctions under Bankruptcy Rule is determined by objective test looking to whether, after reasonable inquiry, sanctioned party could not form reasonable belief that petition is well grounded in fact and warranted by existing law or good-faith argument for modification or reversal of existing law. In re Rainbow Magazine, Inc., 9th Cir.BAP (Cal.) 1992, 136 B.R. 545.

## II.

## PURPOSE FOR FILING

## A.

## DEFINITION OF BANKRUPTCY

Bankruptcy is not just used for composition of debts. As the Untied States Supreme Court has stated on numerous occasions bankruptcy is hard to define. One aspect of the definition is that bankruptcy does involve the relationship between a fraudulent debtor and its creditors. TAGT, Yorkshire, Harris CF ("Harris County Farms") and LTK Management were operated fraudulently by the majority of their members. Railway Labor Executives' Ass'n v. Gibbons, 455 U.S. 457, 466, 8 Bankr.Ct.Dec. 966, Bankr. L. Rep. P 68,557 (U.S. 1982) Although we have noted that "[t] he subject of bankruptcies is incapable of final definition," we have previously defined "bankruptcy" as the "subject of the relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to his and their relief." Wright v. Union Central Life Ins. Co., 304 U.S. 502, 513-514, 58 S.Ct. 1025, 1031-1032, 82 L.Ed. 1490 (1938). See Continental Illinois National Bank & Trust Co. v. Chicago, R.I. & P.R. Co., 294 U.S. 648, 673, 55 S.Ct. 595, 605, 79 L.Ed. 1110 (1935).

Wright  v.  Union  Central  Life  Ins.  Co. 304  U.S.  502,  (U.S.  1938).  The  subject  of bankruptcies is nothing less than 'the subject of the relations between an insolvent or nonpaying or  fraudulent  debtor,  and  his  *514  creditors,  extending  to  his  and  their  relief.'[FN12] This definition of Judge Blatchford, afterwards a member of this Court, has been cited with approval here.[FN13]

FN13 Continental Illinois Nat. Bank & Trust Co. v. Chicago, R.I. & P. Ry. Co., supra, page 672,

55 S.Ct. page 604; United States v. Bekins et al., 304 U.S. 27, 58 S.Ct. 811, at page 814, 82

L.Ed. 1137, decided April 25, 1938; Hanover National Bank v. Moyses, 186 U.S. 181, 187, 22

S.Ct. 857, 46 L.Ed. 1113.

Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co. 294 U.S. 648, 55 S.Ct. 595 U.S. 1935. That provision was there sustained upon the broad ground that the  'subject  of  bankruptcies'  was  *673  nothing  less  than  'the  subject  of  the  relations  between  an insolvent or non-paying or fraudulent debtor, and his creditors, extending to his and their relief.'

U.S. v. Bekins  304 U.S. 27, 58 S.Ct. 811 U.S. 1938.  That provision was there sustained upon the broad ground that the 'subject **814 of bankruptcies' was nothing less than 'the subject of  the  relations  between  an  insolvent  or  nonpaying  or  fraudulent  debtor,  and  his  creditors, extending to his and their relief.'

## B.

## BANK FRAUD

The insider sales and the misuse of the loan proceeds were a crime. The loan documents specifically prevented any insider transactions. All most all of the sales of livestock to Harris County Farms came from the Luedtkes or from companies they owned. From the inception of this venture the Luedtkes had planed on selling their livestock to Harris County Farms. The loan application represented that the Luedtkes would purchase equipment that would have a value of

$617,400.00. Based upon this representation the Bank loaned $493,920.00. All of these loan proceeds were used. However, when the Luedtkes had the equipment appraised, the appraiser valued the equipment at $187,296.60. TAGT is liable on the loan made to Harris County Farms. Mr. Knight had a duty to report these violations to a court.

18 U.S.C.A.   § 4 <u>Misprision of felony</u> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C.A. §1014 <u>Loan and credit applications generally; renewals and discounts; crop insurance</u> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of … any institution the accounts of which are insured by the Federal Deposit Insurance Corporation … upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

<u>U. S. v. Cleary,</u> C.A.2 (N.Y.) 1977, 565 F.2d 43, certiorari denied <u>98 S.</u>Ct. 1469, 435 U.S. 915, 55 L.Ed.2d 506. (Essence of crime of knowingly making false statements in loan applications and financial statements for purpose of influencing a federally insured bank was a making of false statements with intent to influence the bank without regard to whether the bank was actually induced to rely upon the statements.)

## C.

## DIRECTOR DUTY

Mr. Knight was exercising his duty as a manger/member when he filed these cases. 20A Tex. Prac., Business Organizations § 37.9. Duty to act lawfully. In addition to exercising their duties of care and loyalty, directors have a duty to observe the law.[FN1] This includes a duty to refrain from committing ultra vires acts.[FN2] This is an additional duty because, under certain circumstances, directors may decide after careful study that violating the law is in the best interests of the corporation and its shareholders. For example, a bribe to a foreign official may advance the corporation's interests while violating another country's laws as well as the Foreign Corrupt Practices Act.[FN3] Although the directors may believe that "crime pays" under certain circumstances, they stand to be liable for taking illegal action. These principles are well exemplified by Miller v. American Telephone & Telegraph Co 507 F.2d 759 (3d Cir.1974)

[I]t would be more accurate to say that the corporation, or the shareholders in a derivative suit, may seek recovery for illegal conduct as private attorneys general without regard to whether the corporation suffers damage. The justification for allowing suits like Miller is to deter illegal conduct, not to compensate the corporation for damage.

Texas law is consistent with the Miller case. In Staacke v. Routledge, [FN9] the Texas Supreme Court confirmed that personal liability may be imposed on directors for illegal acts.[FN10] The Staacke court viewed acts in violation of a specific statute, malum in se, malum prohibitum, or against public policy as sufficient for the imposition of liability.[FN11]

**D.**

**USE OF BANKRUPTCY PROCEDURES**

The use of a bankruptcy trustee was in the best interests of TAGT and Yorkshire. A trustee would have the power and speed to cure the illegal activity and, if necessary, sell the property. Using the bankruptcy system to achieve those goals has bee approved by the bankruptcy court for the Northern District of Texas. In re StatePark Building Group, Ltd., 316 B.R. 466, 475-476 (B.C. N.D. Tex 2004). (The Movants seek a dismissal of these bankruptcy cases on the grounds that the Receiver filed the petitions in bad faith. They allege that the Receiver filed the petitions shortly before a hearing was scheduled in state court on a motion to disqualify him as Receiver and that this constitutes bad faith. Section 1112(b) of the Bankruptcy Code, which provides that a Chapter 11 case may be dismissed "for cause" has been interpreted to include the lack of good faith in the filing of the petition as a "cause" for dismissal. See In re Humble Place Joint Venture, 936 F.2d 814, 816-17 (5th Cir.1991)(citing Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068, 1072 (5th Cir.1986)). In determining whether the filing of a Chapter 11 petition was in good faith, this Court must look at "the debtor's financial condition, motives, and the local financial realities."*476 Little Creek, 779 F.2d at 1072. To find bad faith, the court must find that the facts surrounding the filing of the petition are particularly egregious. See id. at 1073. Here, the only allegation of bad faith is that the Receiver filed the petitions to avoid being disqualified in the state court litigation. Having heard the testimony of the Receiver and reviewed the facts of this case, the Court finds that this allegation is not a fair representation of the Receiver's motives in filing the petitions. The Receiver testified that he filed the petitions on behalf of the debtors because he was unable to sell the property of the Debtors through the state court receivership

even though he had contracts for the sale of the properties at above market prices. The Receiver testified that because of the contentious relationships among the parties and because state law, unlike bankruptcy law, did not provide an easy mechanism, if any, for selling the property free and clear of liens, claims and encumbrances, he found it particularly difficult to liquidate the Debtors assets in the state court proceedings. The Receiver filed the petitions to better facilitate the sale of the assets, which was his court-appointed duty. He testified that he did not file the petitions to avoid being disqualified. The Court found him to be credible, and the fact that he almost immediately filed a motion for the appointment of a Chapter 11 trustee to take over in these bankruptcy cases indicates that he was agreeable to stepping aside for the benefit of the Debtors and was not trying to stay in place as the Receiver. The Court finds that insufficient evidence exists to find that the Receiver filed these petitions in bad faith. In fact, the Court finds that the Receiver's actions were entirely consistent with and in furtherance of his duties as Receiver over these Debtors.)

The fact that this case has been dismissed is not a reason to allow sanctions. The filing was done to meet the duty of disclosing bank fraud and to explore the possibility of reorganizing or selling the property. In re Park Place Associates, 118 B.R. 613 (Bkrtcy.N.D.Ill.1990). (Filing of Chapter 11 case which was ultimately dismissed on bad faith grounds did not warrant imposition of Rule 9011 sanctions; absent proof to the contrary, it appeared from the record that purpose of filing was to obtain time to explore possibilities of reorganization, not to inflict costs on creditor, and filing of the bankruptcy petition enabled debtor to begin pursuing lender liability action against creditor in federal court, rather than in state court.)

Neither TAGT nor Yorkshire had income. Harris County Farms, the entity that was operating illegally, paid their expenses. Under these circumstances, Mr. Knight was justified and duty bound to seek relief.    Roth v. Mims, 298 B.R. 272  (N.D.Tex. 2003) Delay in seeking bankruptcy protection breach of fiduciary duty when did not file bankruptcy timely.

## III.

## AUTHORITY TO FILE

## A.

## IMPLIED AUTHORITY

Mr. Knight had the implied authority to place TAGT and Yorkshire into bankruptcy. Through the actions of the members and mangers Mr. Knight had been given control of those companies. He was the president and the general manager.

Ex parte Pierce, 161 Tex. 524, (Tex. 1961) cert denied 366 U.S. 928, (U.S. 1961). Relators' claim that the restraining order bond was void is based on the fact that the evidence does not show formal authority of the agent who executed the bond on behalf of the principal. The bond was executed on behalf of General Electric Company by Tom Sproule, general manager of the plant at Tyler.  He testified that he was authorized to execute the bond by legal counsel for the principal.  Absence of more formal authority does not invalidate the bond.

Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co., 235 S.W. 850  (Tex.Com.App. 1921). The general manager of a corporation occupies the position of a general agent. As a corporation can only act through its agents, the general manager, or general agent, is virtually the corporation itself. A. & P. Ry. Co. v. Reisner, 18 Kan. 460.

Dewey T. Ross Engineering Corporation v.  Sonneman.159 S.W.2d 200 (Tex.Civ.App. 1942 Texarkana). The trial court found as a fact that A. B. Everett was the agent of appellant in

the State of Illinois. This finding is in no way attacked by appellant. Under such circumstances, Everett's "powers are coextensive with the powers of the corporation he represents." Helms v. Home Owners Loan Corp., 129 Tex. 121, 103 S.W.2d 128, 134, and authorities there cited. Everett was "virtually the corporation itself". Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co., Tex.Com.App. 235 S.W. 850, 852.

Texas Business Organizations Code Art. 2.23. C-1. Members or managers may take action at a meeting of the members or managers or without a meeting in any manner permitted by the articles of organization, regulations, or this Act. Unless otherwise provided by the articles of organization or the regulations, an action is effective if it is taken by:  (1) an affirmative vote of those persons having not fewer than the minimum number of votes that would be necessary to take the action at a meeting at which all members or managers, as the case may be, entitled to vote on the action were present and voted; or  (2) consent of each member of the limited liability company, which may be established by:  (a) the member's failure to object to the action in a timely manner, if the member has full knowledge of the action;  (b) consent to the action in writing signed by the member; or  (c) any other means reasonably evidencing consent.  20 Tex. Prac., Business Organizations § 20.30 Even in the corporate context, where authorization in the bylaws or by formal action of the board of directors is generally viewed as necessary,[FN9] there are cases recognizing the authority of officers and agents to act pursuant to rather informal authorization.[FN10] In the context of an LLC that operates fairly informally like a partnership, it would not be appropriate to construe the term "resolutions" too formally.

## B.

## INTERESTED MANAGERS/MEMBERS

Since all the other managers and members of Yorkshire and TAGT were interested in the

transaction concerning placing those entities into bankruptcy, only Mr. Knight had to vote in favor of such an action.

Muller v. Leyendecker 697 S.W.2d 668 Tex.App. 4 Dist.,1985. A director cannot vote on a transaction with the corporation in which he is personally involved. Wiberg v. Gulf Coast Land & Development Co., 360 S.W.2d 563 (Tex.Civ.App.-Beaumont 1962, writ ref'd n.r.e.).

20A Tex. Prac., Business Organizations § 37.4 Chapter 37. Duties of Directors, Officers, and Controlling Shareholders§ 37.4. Duty of loyalty--Self dealing

In 1985, Texas adopted legislation to address the problem of self-dealing transactions and remove many of the ambiguities in the area. The statute, as amended in 1997, provides:

A. An otherwise valid contract or transaction between a corporation and one or more of its directors or officers, or between a corporation and any other domestic or foreign corporation or other entity in which one or more of its directors or officers are directors or officers or have a financial interest, shall be valid notwithstanding that the director or officer is present at or participates in the meeting of the board or committee thereof which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if any one of the following is satisfied:

(1) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors or the committee, and the board or committee in good faith authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors, even though the disinterested directors be less than a quorum; or

(2) The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the shareholders; or

(3) The contract or transaction is fair as to the corporation as of the time it is authorized, approved, or ratified by the board of directors, a committee thereof, or the shareholders.

B. Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board of directors or of a committee which authorizes the contract or transaction.[FN10]

In Marciano v. Nakash, 535 A.2d 400, 404 (Del.1987), the court upheld a self-dealing transaction based on fairness where it was impossible to obtain a board or shareholder vote because contending parties were deadlocked at both levels.  The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts. *Id.* at 710. **This case illustrates the limitation inherent in viewing section 144 as the touchstone for testing interested director transactions. Because of the shareholder deadlock, even if the Nakashes had attempted to invoke section 144, it was realistically unavailable. The ratification process contemplated by section 144 presupposes the functioning of corporate constituencies capable of providing assents. Just as the *405 statute cannot "sanction unfairness" neither can it invalidate fairness if, upon judicial review, the transaction withstands close scrutiny of its intrinsic elements.**[FN3]

Under Texas law, a "disinterested" director is generally one without a direct, material financial interest in the transaction in question.[FN16] The 1997 amendments to the Texas Business Corporation Act define a "disinterested" director as one in which the director, an entity affiliated with the director, or a close relative of the director do not have a material financial interest in a particular transaction.

# IV.

## ALLEGED CONFLICT OF INTEREST

### A.

### INITIAL MEETING

When the petitions were filed a conflict of interest did not exist between Mr. Leonard and either TAGT or Yorkshire. In order to obtain information he had to meet with a member and manger of Yorkshire and a limited partner of TAGT. He did not represent Mr. Knight and did not represent any creditor or entity that held an adverse interest to either debtor.

### B.

### DERIVATIVE SUIT

Knight's pleadings in the state court action included claims of a derivative nature including the breach of duties committed by the Luedtkes. His interests are aligned with both TAGT and Yorkshire.

V.T.C.A., Business Organizations Code § 153.401 (Limited Partnerships)

**Right to Bring Action**

A limited partner may bring an action in a court on behalf of the limited partnership to recover a judgment in the limited partnership's favor if:

(1) all general partners with authority to bring the action have refused to bring the action; or

(2) an effort to cause those general partners to bring the action is not likely to succeed.

**153.402. Proper Plaintiff**

In a derivative action, the plaintiff must be a limited partner when the action is brought and:

(1) the person must have been a limited partner at the time of the transaction that is the subject of the action; or

(2) the person's status as a limited partner must have arisen by operation of law or under the terms of the partnership agreement from a person who was a limited partner at the time of the transaction.

Resolution Trust Corp. v. Norris 830 F.Supp. 351(S.D.Tex.,1993). This court also agrees with Judge Lake's ruling in FDIC v. Brown, supra, that the Texas business judgment rule does not protect a director if he abdicated his responsibility and failed to exercise his judgment as a director. As the Second Circuit has stated: *360 Whatever its merit, however, the business judgment rule extends only as far as the reasons which justify its existence. Thus, it does not apply in cases, e.g., in which the corporate decision lacks a business purpose, is tainted by a conflict of interest, is so egregious as to amount to a no-win decision, or results from an obvious and prolonged failure to exercise oversight or supervision. Other examples may occur.  Joy v. North, 692 F.2d 880, 886 (2d Cir.1982), cert. denied, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). Other courts have also concluded that directors who "abdicate their managerial responsibilities" are not entitled to the business judgment rule's protection from liability. See, e.g., Rabkin v. Philip A. Hunt Chemical Corp., 13 Del.J.Corp.L. 1216, 1217, 1987 WL 28436 (Del.Ch.1987). The RTC has alleged the type of "prolonged failure to exercise oversight or supervision" that falls outside the business judgment rule as a failure to exercise any judgment. The RTC's claims for simple negligence, not founded in the directors' alleged abdication of their duties, are dismissed.

Generally whether corporation has acted in excess of its lawful powers can be raised only by one interested in the corporation or in direct proceeding brought by the state either to forfeit

corporation's charter or to subject the corporation to punishment for the unlawful act.  English v. Landa Motor Lines 166 S.W.2d 721 (Civ.App.-Austin 1942 error refused).

Lea County Elec. Co-op., Inc. v. City of Plains, 373 S.W.2d 90  (Tex.Civ.App.-Amarillo Oct 28, 1963writ refused n.r.e.) In Texas a corporate act becomes illegal when committed in violation of an express statute or a specific subject or when it is malum in se [FN1] or malum prohibitum [FN2], or when it is against public policy. Southwestern Gas & Electric Co. v. City of Gilmer, Tex., supra; Staacke v. Routledge, 111 Tex. 489, 241 S.W. 994.  Under these authorities the acts may be questioned only through quo warranto by the Attorney General.

FN1.  A wrong in itself; an actor case involving illegality from the very nature of the transaction, upon principles of natural, moral and public law.

FN2.  A wrong prohibited; an act involving an illegality resulting from prohibitive law.

V.T.C.A., Penal Code 7.23 Criminal Responsibility of Person for Conduct in Behalf of Corporation or Association (a) An individual is criminally responsible for conduct that he performs in the name of or in behalf of a corporation or association to the same extent as if the conduct were performed in his own name or behalf.

(b) An agent having primary responsibility for the discharge of a duty to act imposed by law on a corporation or association is criminally responsible for omission to discharge the duty to the same extent as if the duty were imposed by law directly on him. (c) If an individual is convicted of conduct constituting an offense performed in the name of or on behalf of a corporation or association, he is subject to the sentence authorized by law for an individual convicted of the offense.

Texas Jurisprudence, Third Edition Corporations XVIII. Corporate Powers and Functions

C. Ultra Vires Acts The Business Corporation Act limits the assertion of the doctrine of ultra vires to the following situations--

-- in a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation.[FN1] Interest, also, may not be recovered.[FN2]

-- in a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative or through shareholders in a representative suit against incumbent or former officers or directors of the corporation for exceeding their authority.[FN3]

The Texas Limited Liability Company Act addresses the right to bring a derivative action by incorporating by reference Article 5.14 of the Texas Business Corporation Act.[FN1] A derivative suit is the vehicle by which a member may bring an action to remedy or prevent a wrong to the LLC.[FN2] The member would be asserting a cause of action belonging to the LLC and thereby acting as the representative and champion of the LLC. Examples of claims that would be derivative in nature are breach of the duty of care of a member, manager, or officer to the LLC (i.e., mismanagement) and breach of the duty of loyalty of such a person to the LLC (i.e., self-dealing, appropriation of a business opportunity, etc.).

The derivative proceeding provisions of the Texas Business Corporation Act were completely rewritten by amendments adopted in 1997. A very significant aspect of these amendments is their application to closely-held corporations and LLCs. A closely-held LLC would be an LLC that has less than 35 members and has no membership interests listed on a national securities exchange or quoted on an over-the-counter market.[FN3] With respect to a closely held LLC, most of the provisions that generally apply to derivative proceedings, such as the contemporaneous ownership requirement and the demand requirement, do not apply. [FN4]

Further, the court essentially has discretion to treat the claim as either a derivative or direct claim and to determine whether the recovery should be paid to the plaintiff member or the LLC.[FN5]

**C.**

**STANDING AND WAIVER**

The alleged conflict of interest involved Yorkshire and TAGT. Those entities did not object to Leonard's representation of Knight. A conflict of interest can be waived. The Luedtkes' do not have standing to complain of an alleged conflict of interest. In re Cerberus Capital Management, L.P. 164 S.W.3d 379 (Tex.2005) "The relators argue that disqualification was improper because V & E obtained valid oral and written waivers before appearing in this lawsuit on the relators' behalf. The bankruptcy trustee contends that the waiver letter signed by Jonkers, WSNet's Executive Vice President and Chief Financial Officer, at the behest of the company's general counsel was ineffective because it did not fully and accurately disclose the conflict. We disagree. Comment 10 to Rule 1.09 provides that "[a] waiver is effective only if there is consent after disclosure of the relevant circumstances, including the lawyer's past or intended role on behalf of each client, as appropriate." [FN10] The waiver letter in this case disclosed V & E's proposed *383 representation of the relators in the shareholder derivative suit, the subject matter of its prior work for WSNet, the time period involved, the attorney involved, the nature of the discussion with WSNet's general counsel, and how the prior representation concluded. This disclosure meets the requirements set forth in comment 10 of Rule 1.09.[FN11] Furthermore, it is undisputed that Jonkers signed the waiver letter after reviewing the petition and chose not to consult WSNet's outside counsel before signing the waiver. The record reveals that WSNet's files contained information regarding V & E's prior work for WSNet, including an email from V & E partner Patrick Breeland to a WSNet representative disclosing his work for WSNet and a draft of

the asset purchase agreement. In addition, it is undisputed that WSNet's general counsel verbally agreed to waive any potential conflict of interest, which is a permissible, albeit inadvisable, manner of providing disclosure and obtaining consent under the Disciplinary Rules.[FN12] Accordingly, WSNet was adequately informed of V & E's prior representation and knowingly waived any conflict. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06 cmt. 8 ("While it is not required that the disclosure and consent be in writing, it would be prudent for the lawyer to provide potential dual clients with at least a written summary of the considerations disclosed.")."

Ferguson v. Alexander, 122 S.W.2d 1079 (Tex.Civ.App.-Dallas 1938 writ dismissed, judgment correct) "The doctrine seems to be well settled that, "The objection that an attorney is disqualified by reason of his representing adverse interests, is available only to those as to whom the attorney in question sustains or has sustained the relation of attorney and client * * *." 7 C.J. Secundum, Attorney and Client, p. 826, § 47. To the same effect see: Harvey v. Harvey, 202 Wis. 553, 231 N.W. 580, 583; Michel v. McKenna, 199 Wis. 608, 227 N.W. 396; Van Veen v. Van Veen, 213 Iowa 323, 236 N.W. 1, 8, 238 N.W. 718."

Creditor that never moved to dismiss debtor's Chapter 11 filing, or otherwise alerted court to purported frivolity of petition, was estopped from asserting that Chapter 11 petition was frivolously filed under Bankruptcy Rule 9011. Matter of Cohoes Indus. Terminal, Inc., C.A.2 (N.Y.) 1991, 931 F.2d 222

## V.

## PLACE OF FILING

Pending suit

In Texas the suit for the appointment of a receiver must be filed in the county in which the company has its registered office. . King Commodity Co. of Texas, Inc. v. State 508 S.W.2d

439 (Civ.App. 1974)) (District court of county other than that in which corporation had its registered office did not have jurisdiction to preserve subject matter or maintain status quo by appointing receiver pending determination of proper venue for insolvency proceeding)

Venue should have remained in Wichita County in the state suit since venue is determined on the date the petition is filed. Where there has been a change of residence, it must be complete before suit to defeat action in county in which defendant previously resided. Brown v. Boulden (1857) 18 Tex. 431; Wilson v. Bridgeman (1860) 24 Tex. 615; Tucker v. Anderson (1863) 27 Tex. 276.

Waiver by companies

Venue can be waived. Hunt v. Bankers Trust Co. 799 F.2d 1060 (5th Cir. (Tex.)1986). Venue is a privilege personal to a litigant, and, even when venue is laid in a court where it would otherwise be improper, it may be waived by express agreement or by conduct.[FN11] The venue provisions relating to bankruptcy are no more sacred.

On equitable grounds courts can determine the place for venue. Matter of Commonwealth Oil Refining Co., Inc. 596 F.2d 1239 (5th Cir. (Tex.), 1979). The district court reversed the findings that the principal place of business is San Antonio and that venue is proper in San Antonio, but nevertheless it retained jurisdiction pursuant to Bankruptcy Rule 116(b), which allows the court to retain a case "in the interest of justice and for the convenience of the parties" even though venue was improperly laid. Fed.R.Bankr.P. 116(b)(2).

TAGT and Yorkshire's Registered office and registered agent were in Wichita County. Principal place where business was conducted for purchasing livestock from insiders was Everman, Tarrant County, Texas. This is in the Northern District of Texas.

Until the Court mentioned the order in which the bankruptcy cases had been filed at the hearing on the agreed motion to dismiss, no one had challenged the order in which the cases had been filed or moved for a dismissal based upon those facts. Movants are estopped and/or have waived the right to ask for sanctions based upon the order in which the cases were filed. Matter of Cohoes Indus. Terminal, Inc., 931 F.2d 222 (C.A.2 (N.Y.) 1991),  (Creditor that never moved to dismiss debtor's Chapter 11 filing, or otherwise alerted court to purported frivolity of petition, was estopped from asserting that Chapter 11 petition was frivolously filed under Bankruptcy Rule 9011.)

## VI.

## FIRM SANCTIONS

If any sanctions are warranted against Mr. Leonard, they should not be granted against the firm of Leonard, Key & Key PLLC. Mr. Leonard is the only member of this three-man firm that does bankruptcy work. The members do not share income. They share overhead expenses only. None of the other members performed any work on this case. In re General Homes Corp. 181 B.R. 870 (Bkrtcy.S.D.Tex.,1994). The traditional approach to attorney liability for violation of Rule 9011 and contempt violations is to hold the signing attorney alone responsible for payment of any sanctions imposed. *See, In re Excello Press, Inc.*, 120 B.R. 938 (N.D.Ill.1990). This Court also recognizes that there are times when it is appropriate to hold the firm liable for any such violations. *See, In re DeLorean Motor Co. Litigation*, 59 B.R. 329 (E.D.Mich.1986). In this case it is appropriate to hold the signing attorney, J.P. Moon, solely responsible for sanctions imposed on the attorneys of the Committee. Mr. Moon was the party who signed the complaint; he was admittedly the bankruptcy "expert" for the firm of SD & M and thus the responsibility fell to him to ensure the proper steps were performed and that actions taken were appropriate

under the circumstances.

## VII.

## FACTS OF CASE

Tracy Knight initially contacted John Leonard at during January 2006 concerning the operations of TAGT and Harris County Farms. They spoke on January 25, 2006. At the beginning of February 2006, Mr. Knight sent Mr. Leonard information and documentation concerning the operations of those entities. The information included the ownership of the various entities, copies of the formation and management documents, documents produced in the state court litigation that included invoices, checks, real estate valuation and bank statements, letter from the attorneys for the Brenham National Bank, loan documents, letter from Sidney Levine with valuation of personal property, and the pleadings in the state court action. The fact that neither TAGT nor Yorkshire were receiving any rental payments for the use of the property.

Mr. Leonard reviewed these documents, had consultations by phone with Mr. Knight. He also discussed the case with Mr. Knight's counsel, Mr. Mike Essmeyer, to obtain and verify facts. Mr. Leonard also did extensive research spending more than 12 hours. The areas of research included governance of the entities, the effect of the entities operations on the loan documents and Mr. Knight's subsequent duties, the proper classification of the state court suit, the costs of bankruptcy compared to the costs of state court litigation, the rationale for bankruptcy laws, good faith and bad faith concerning bankruptcy, operation of private slaughter facilities, liability for criminal acts, and the duty owed by managers and officers to the business entity.

After reviewing these matters Mr. Leonard reached the following conclusions:

1.  Bankruptcy laws were designed to work in the current situation because "[a]lthough we have noted that "[t]he subject of bankruptcies is incapable of final definition," we have previously defined "bankruptcy" as the "subject of the relations between an insolvent <u>or</u> nonpaying <u>or</u> fraudulent debtor and his creditors, extending to his and their relief." <u>Railway Labor Executives' Ass'n v. Gibbons,</u> 455 U.S. 457, 466, 8 Bankr.Ct.Dec. 966, Bankr. L. Rep. P 68,557 (U.S. 1982) (Emphasis added.)

2.  The owners/mangers did not pay attention to the differences between the various entities that had been established and operated the companies as one business.

3.  TAGT was in default to the Bank. It had failed to make payments to the Bank and was in default under the terms of the loan documents. The documents prohibited Harris County Farms and TAGT from insider trading; however at least 90% of the livestock purchased came from either Terry or George Luedtke. Also, the entities and the individuals represented that equipment worth $617,400.00 would be purchased and used in the operations. However, the Luedtkes' appraisal showed equipment having a value of only $187,296.60. The Bank had advanced $493,920.00 for the purchase of equipment.

4.  The nonmonetary defaults were bank fraud and Mr. Knight was under a duty to report t to a court or incur liability himself.

5.      TAGT had no income or operations and required additional capital from its members to operate. Harris County Farms did not have sufficient income to pay for its operations and required additional funds from its members.

6.      Yorkshire had the authority to file a bankruptcy on behalf of TAGT. Mr. Knight had the authority to file the bankruptcy for Yorkshire. He was its president and been given the powers as general manager. He had a duty to protect TAGT and Yorkshire and to report the actions to a court. Also, he was the only member/manager that was disinterested in the insider transactions. Consequently, the votes of the other member managers would not be counted in determining if TAGT and Yorkshire should file for bankruptcy relief.

7.      Proceeding in the bankruptcy court would be less expensive and faster than proceeding in state court.

8.      The state court suit was actually a derivative suit that Mr. Knight brought on behalf of the companies against the Luedtkes for their mismanagement and criminal acts.

## VIII.

## CONCLUSION

Movants have not met their burden of proof. They have not proved egregious conduct by any of the respondents. The evidence shows that the neither the filing nor the actions of Mr.

Leonard and Mr. Knight was done in bad faith. They have not proven that any of the respondents

acted for an improper motive. They had the burden to prove their motion with evidence that is

clear and convincing. They have failed.

                Respectfully submitted,

                John A. Leonard, Esq.
                **LEONARD, KEY & KEY, PLLC.**
                900 Eighth Street – Suite 320
                P.O. Box 8385
                Wichita Falls, Texas 76301
                Telephone:  (940) 322-5217
                Facsimile:  (940) 322-3381
                e-mail lenbiz@rlklaw.net

    By:    /s/ John A. Leonard
                John A. Leonard
                State Bar No. 12209600
                Attorney for Respondents

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on October 3, 2006, I sent a true and correct copy of this documents to:

| Ron Yandell | via E-mail | ronyandelllaw@aol.com |
|---|---|---|
| Reese Baker | via E-mail | reeseb@bakerassociates.net and ECF |
| Thomas Henderson | via E-mail | thenderson@tsh-atty.com and ECF |

                /s/ John A. Leonard
                John A. Leonard